IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DAVID DOWNING, | ) |
| Plaintiff, | ) |
| v. | ) Civil No. 05-01 |
| CONSOL ENERGY, INC., | ) |
| Defendant. | ) |

## Opinion

Plaintiff David Downing brings this civil rights employment discrimination action alleging that he was unlawfully terminated based on his age during a reduction in force by Defendant Consol Energy, Inc. in violation of the Age Discrimination in Employment Act ("ADEA") (29 U.S.C. § 621 *et seq.*) and the Pennsylvania Human Relations Act (43 Pa.C.S.A. § 951 *et seq.*) ("PHRA"). Presently before the Court is Consol Energy, Inc.'s ("Consol") Motion for Summary Judgment (Doc. 20). For the reasons stated below we will deny Defendant's motion.

I.   **GENERAL BACKGROUND**

David Downing began his employment with Consol in June, 1972. He worked for Consol in several capacities over the next 31 years, the last of which was as a senior analyst in the Information Systems and Technology department ("IS&T"). At the time of his termination on December 19, 2003, Downing was 55 years of age.

From 1995 to 2002, Downing worked primarily on Consol's legacy computer system, which was eventually phased out when a new computer system, known as SAP, was implemented. Downing was one of seven individuals working on the sales and distribution module of SAP.

Downing also performed work on the financial module of SAP. The SAP system went live in August, 2003. Thereafter, Downing provided support to the new system until his termination on December 19, 2003.

In September 2003, Brett Harvey, the President and Chief Executive Officer of Consol, determined that a reorganization was necessary. Reductions had already occurred in Consol's mining operations, therefore Consol determined that a corresponding reduction of corporate employees was necessary to improve its financial performance. Nearly every department at Consol's headquarters was affected by the reduction in force and overall 77 employment positions were eliminated from December 2003 through March 2004.

Harvey assigned William Lyons, the Vice President of Human Resources, to look at the entire company and discuss the reorganization with other department heads with the goal of reducing overhead by $10,000,000. In late October 2003, Lyons gave the responsibility to perform a study of the IS&T department to Consol employee Gary Bench. One of Bench's responsibilities was to carry out the reduction in force with respect to the IS&T department.

Bench was placed in charge of the IS&T department on a temporary basis. He had no prior experience with the IS&T department, and shortly after the reduction in force was carried out another individual, George Rosato, was placed in charge of the department. Lyons explained that he did not choose Bench for the position because he was not qualified. There were seven employees working on the sales and distribution module of SAP at the time Bench was charged with reducing the forces. Two of those individuals were transferred to the controllers' department. Downing's position was selected for termination by Bench and thus Downing was terminated on December 19, 2003. Downing now alleges that he was unlawfully terminated based on his age.

## II. STANDARD OF REVIEW

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P.56(c), Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). Summary judgment may be granted only if the moving party establishes that there exists no genuine issue of material fact and that it is entitled to judgment as a matter of law. Id. Summary judgment is appropriate only when the record evidence could not lead a reasonable jury to find for the non-moving party. Anderson v. Liberty Lobby Inc., 477 U.S. 242, 248-249 (1986). In evaluating a motion for summary judgment the court does not weigh the evidence or make credibility determinations. Reeves v. Sanderson Plumbing Products, Inc., 120 S.Ct. 2097, 2110 (2000). Rather than evaluating the evidence and determining the truth of the matter, the court determines whether there is a genuine issue for trial. Anderson, 477 U.S. at 249. In reviewing the evidence, the court draws all reasonable inferences in favor of the non-moving party. Reeves, 120 S.Ct. at 1210; Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-88 (1986).

## III. DISCUSSION

This action was filed on January 3, 2005. Discovery closed on December 12, 2005. Neither party filed a dispositive motion and both parties filed their pretrial statements. Accordingly, the Court held a pretrial conference on March 1, 2006. At the pretrial conference the parties requested to reopen discovery to depose two additional persons, one of whom was Plaintiff's spouse, and to potentially file a motion for summary judgment based on the additional depositions.

3

The only record evidence relied upon by either party that is based on discovery after the March 1, 2006 pretrial conference is Downing's spouse's deposition. Consol cites this deposition testimony to support its assertion that "Downing is no longer looking through the papers for a job." (Consol's Statement of Material Facts, at ¶ 95.) The cited testimony is as follows:

> Q. Do you know if your husband is still looking through the paper for jobs?
> A. No, he's more – he's pushing more towards the photography.
> Q. Do you know when that change happened, when he stopped looking through the paper and started, I guess, more significantly on the photography side?
> A. No. I don't know.

(Ruth Downing Deposition, March 10, 2006, at 25.) At best this testimony shows that Downing's wife's belief is that her husband is no longer looking through the paper for jobs as of March 10, 2006. However, Consol's motion for summary judgment on this issue seeks foreclosure of mitigation as of December, 2005. In addition, Mrs. Downing's testimony just prior to the above testimony reveals that she actually does not know what her husband is doing with respect to a job search.

> Q. Is your husband still looking for a job in the computer industry, computer setting?
> A. I don't know, I haven't asked him that, and the reason I haven't asked is because I wouldn't know how upset -- if he'd be upset or hurt again from being -- you know, what happened at CONSOL, about being let go again.

(Ruth Downing Deposition, at 25.) It is a reasonable assumption that a spouse who admits she does not know if her husband is looking for a computer industry job because she does not inquire out of respect for his feelings, might also not know what actions he is taking with respect to looking for a computer industry job.

We highlight this exchange at the beginning of our discussion because it is symptomatic of the problem with Consol's motion for summary judgment: a review of the deposition testimony

4

excerpts provided by the parties shows that genuine issues of material fact exist in this case. Our review also indicates an obvious need to resolve credibility questions as to key disputed issues. Mrs. Downing's one-page excerpt by itself is a convincing argument that a disputed issue exists with respect to Consol's stated proposition. As such, the Court questions why it was necessary to reopen discovery other than to permit Consol a bite of the apple it missed the first time dispositive motions were due. In light of these considerations we do not find it necessary to discuss in detail the evidence showing that a genuine issue of material fact exists in addressing Consol's arguments.

Consol's arguments for summary judgment are as follows. First, that Erin Perry-Byrne, one of the younger employees retained by Consol, is not similarly situated to Downing. Second, that Downing is unable to rebut Consol's legitimate nondiscriminatory reasons for Downing's termination. Related to this argument is Consol's argument that Downing is unable to show that an invidious discriminatory reason is more likely than not the reason for his termination. Finally, Consol argues that Downing has failed to mitigate his damages after December 2005.

**A. Applicable Law**

The same analysis is used for both Plaintiff's ADEA claim and his PHRA claim. See O'Connors v. Chrysler Fin. Corp., 160 F.3d 971, 972 (3d Cir. 1998). Under the ADEA, "[i]t shall be unlawful for an employer (1) . . . to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1).

The familiar McDonnell Douglas analysis requires: "first, that the plaintiff establish a prima facie case of employment discrimination; second, that the employer proffer a nondiscriminatory reason for its adverse employment action; and third, that the plaintiff must then show that the

5

employer's proffered explanations were pretextual." Williams v. Shenango, Inc., 986. F. Supp. 309, 318 (citing McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973)); see also Goosby v. Johnson & Johnson Medical, Inc., 228 F.3d 313 (3d Cir. 2000).

> To establish a prima facie case of age discrimination, a plaintiff must show that he or she:
>
> (1) was a member of the protected class, i.e., was over 40, (2) was qualified for the position, (3) suffered an adverse employment decision, and (4) ultimately was replaced by a person sufficiently younger to permit an inference of age discrimination. Duffy v. Paper Magic Group, Inc., 265 F.3d 163, 167 (3d Cir. 2001).

Monaco v. American General Assurance Company, 359 F.3d 296, 300-301 (3d Cir. 2004), cert. den'd, 125 S.Ct. 62 (2004).

Once a plaintiff sets forth a prima facie case, the defendant has the relatively light burden of coming forward with a legitimate, non-discriminatory reason for the adverse employment decision. Goosby, 228 F.3d at 319. "If the employer is able to proffer a legitimate non-discriminatory reason for its actions, the plaintiff must demonstrate that the proffered reason was merely a pretext for unlawful discrimination." Id.

### B. Prima Facie Case of Age Discrimination

Consol first argues that Downing is unable to state a prima facie case with respect to one of the three younger employees retained by Consol. Consol then argues that Downing is unable to show that Consol's nondiscriminatory reasons for terminating Downing were a pretext for unlawful age discrimination.

#### 1. Whether Perry-Byrne is Similarly Situated to Downing

"In the context of a reduction in force, in order to satisfy the fourth element of a prima facie case under the ADEA, a plaintiff must show that the employer retained a sufficiently younger

similarly situated employee." Monaco v. American General Assur. Co., 359 F.3d 296, 301 (3rd Cir. 2004), citing Anderson v. Consol. Rail Corp., 297 F.3d 242, 249-50 (3d Cir.2002).

Consol argues that Plaintiff's age discrimination claim fails with respect to Erin Perry-Byrne, one of the three younger, less experienced employees retained by Consol. Specifically, Consol argues that Perry-Byrne was not similarly situated to Downing because she held a position several salary grades below Downing's. (Consol's Brief in Support, at 6-7, citing Balderston v. Fairbanks Morse Engine Div., 328 F.3d 309, 322 (7th Cir. 2003) & Kendall v. Block, 821 F.2d 1142, 1147 (5th Cir. 1987).)

In response, Downing argues that Consol focuses too narrowly on the question of difference in salary and grade level. Downing correctly states that the United States Court of Appeals for the Third Circuit has given a much broader instruction as to the analysis undertaken on this issue, identifying salary as only one of several factors to be considered on a case-by-case basis. The Third Circuit Court stated:

> In order to determine who might qualify as a similarly situated employee we must look to the job function, level of supervisory responsibility and salary, as well as other factors relevant to the particular workplace. This determination requires a court to undertake a fact-intensive inquiry on a case-by-case basis rather than in a mechanistic and inflexible manner.

Monaco, 359 F.3d at 305, citing Pivirotto v. Innovative Sys., Inc., 191 F.3d 344, 357 (3d Cir.1999).

Consol's argument is contrary to established precedent in this Circuit as Consol argues that the Court should conclude as a matter of law that the difference in grade and salary preclude a finding that Perry-Byrne was similarly situated to Downing. As such, Consol's argument necessarily fails. Under Consol's approach we need not even consider job function and level of

supervisory responsibility, nor does Consol's approach allow for consideration of "other factors relevant to the particular workplace." Monaco, 359 F.3d at 305.

As for Consol's supporting case law, we do not read these cases as supporting a bright line rule. In Balderston, another employee was found to be not similarly situated to plaintiff not only because his salary was significantly lower, but also because he was not in the "general manager" classification and because he had far more extensive experience with Latin American sales than plaintiff did. Balderston, 328 F.3d at 322. In Kendall, in addition to a salary and grade level difference, the Court noted that the two employees at issue received overall performance appraisal ratings that were much higher than plaintiff's most recent unacceptably low ratings. Kendall, 821 F.2d at 1147.

Downing went beyond rebutting Consol's flawed legal argument and also set forth an argument that Perry-Byrne is similarly situated to Downing. Downing first argued that he and Perry-Byrne are similarly situated based on job function and level of supervisory responsibility. Downing also argued that other factors specific to the particular situation, namely, undergoing an implementation of a new computer system, show that the two are similarly situated.

Consol apparently saw this as another opportunity to present an argument to the Court. In Consol's Reply Brief, Consol uses Downing's additional rebuttal argument (which was not needed to counter Consol's sole argument made in its motion) to surreptitiously amend its original motion for summary judgment to argue more broadly that Perry-Byrne and Downing are not similarly situated. However, Consol most likely did not present this argument originally because as is demonstrated by a review of the two parties' arguments on this issue, genuine issues of material fact

exist as to whether Perry-Byrne is similarly situated to Downing. Accordingly, we will deny Consol's motion for summary judgment as to whether Perry-Byrne is similarly situated to Downing.

### 2. Whether Consol's Legitimate Non-Discriminatory Reasons were Pretextual

A "plaintiff may defeat a motion for summary judgment (or judgment as a matter of law) by pointing 'to some evidence, direct or circumstantial, from which a factfinder would reasonably either: (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action.'" Jones v. School District of Phila., 198 F.3d 403, 413 (3d Cir. 1999) (quoting Fuentes v. Perskie, 32 F.3d 759, 764 (3d Cir. 1994) and Sheridan v. E.I. DuPont de Nemours and Co., 100 F.3d 1061, 1067 (3d Cir. 1996) (*en banc*), cert. denied, 521 U.S. 1129 (1997)).

#### a.

Consol asserts that Downing cannot show that its legitimate nondiscriminatory reasons for selecting Downing for termination were a pretext for age discrimination. Consol maintains that Downing was selected for termination for two reasons: (1) he was not a team player and was difficult to work with; and (2) the primary responsibilities Downing had before the reduction were no longer necessary after the transition to SAP.

Downing responds by arguing that Consol's two stated reasons for his termination raise genuine issues of material fact. As to Consol's argument that Downing was terminated because he was not a team player and was difficult to work with, Downing points out that the decision maker, Gary Bench, testified that these considerations played no part in his decision to eliminate Downing's job position. (Downing's Brief in Opposition, at 10-12.) In particular, when asked "So, Mr. Downing being a team player or not was not the basis for your decision to eliminate the position,"

Bench responded "Correct." (Gary Bench Deposition, December 12, 2005, at 25-26.) Downing argues more than that just this one fact and offers more extensive supporting evidence, but this is sufficient by itself to demonstrate a genuine issue of material fact. We note that Consol apparently agrees as it abandoned this argument in its reply brief.

As to the second stated reason, that Downing's primary responsibilities were no longer necessary after the transition to SAP, Downing argues that many genuine issues of material fact exist. We agree. Downing points to Gary Bench's testimony that shows, in part, that Bench did not know what each member of the team's responsibilities actually were, that he did not ask the team members what their responsibilities were, that he did know what the team members' respective skills and experience were, and that he did not know what skill sets were necessary to support the new computer system. In addition, Downing generally relies on Bench's testimony that he never consulted with the twenty-year general manager of the IS&T department most familiar with Downing's skills and abilities. Downing also points to the fact that Bench was not put in charge of the IS&T department after the reduction in force because Lyons determined that Bench did not have the qualifications. Downing thus reasonably argues that it is a genuine issue of material fact as to whether a person so devoid of knowledge about the people and positions involved actually based his decision on what responsibilities would be needed after the transition to SAP.

Consol replies to this argument in part by attacking Downing's argument that Bench made an uninformed decision. However, Downing does not generally argue that Bench made an uninformed decision, but rather he argues that Bench decided to unlawfully eliminate the oldest employee on the team and therefore he either had no need to make an informed decision or consciously chose not to become informed. Consol's reply argument is practically a newly made

10

argument to support a showing that Consol's decision was legitimate. Again, it is not surprising that Consol did not present this information in its original brief, as it would not support judgment as a matter of law. We need not address the documentary evidence cited by each party piece by piece as Downing has cited sufficient documentary evidence, particularly Bench's testimony, to raise a genuine issue of material fact regarding whether Downing was actually chosen for termination because his primary responsibilities were no longer needed.

**b.**

Finally, Consol argues that Downing cannot show that an invidious discriminatory reason was more likely than not a motivating or determinative cause of Consol's action. Consol presents statistics of employees retained and terminated during the reduction in force across all of Consol's salary grade levels to support its assertion that there is no pattern or evidence of age discrimination by Consol.

Downing responds by arguing that a critical fact exists that requires the fact finder to focus its attention on the applications group within the IS&T department. That fact, according to Downing, is that the applications group was the only group that Bench made his reduction in force decisions without consulting others. In contrast, Downing argues that Bench did consult with others about decisions with respect to the operations group. Downing thus concludes that because Bench selected older employees for termination from the applications group, it raises the presumption that when left on his own to make the decision Bench chose to keep a younger workforce.

Consol responds by arguing that the appropriate overall scenario to be considered must at a minimum include the entire IS&T department. However, if Downing is right, that Bench sought input from others when making reduction in force decisions with respect to the operations group but

11

made the reduction in force decisions by himself with respect to the applications group, then that fact may require the analysis to be focused only on the relevant applications group.

Consol recognizes this possibility and thus argues that it is not true that Bench did not consult with others when making his reduction in force decisions with respect to the applications group. Consol also argues that there is no evidence to show what role other employees had on the decision making process with respect to either group. Consol also asserts that the evidence shows that Bench did consult with George Rosato and an employee named Larson, and that Bench reviewed his decisions with William Lyons. (Consol's Reply Brief, at 5-6, citing "Bench Depo. at 60:19-24; 70:1-13;" and at "71:24-72:8".) We have searched all three of the Bench deposition excerpts provided in the parties' Appendices and have been unable to find support for Consol's allegations at the page citations indicated.

The Court is aware that several independent civil actions have been asserted against Consol by former employees regarding the reduction in force. In addition it appears that many of the depositions covered material relating to more than one employee and most of the key witnesses were deposed twice. It is likely that the citation is a mere mix-up, nonetheless without documentary evidence to support the assertion we cannot assume that it is true for purposes of this motion. Our review of the documentary record provided by the parties shows that there are genuine issues of material fact as to whether Bench consulted with anyone regarding his reduction in force decisions, and if he did consult what was the substance of the consultations.

c.

Based on the above discussion we conclude that a reasonable jury could disbelieve Consol's stated reasons for termination. With respect to Consol's stated reason that Downing was terminated

12

because he was not a team player the evidence convincingly shows that this was not true. With respect to Consol's stated second reason, the fact that Bench knew so little about the IS&T department functions, the employees' skills and abilities, the skills and abilities needed in the future, and that he did not seek advice from the twenty-year general manager, at a minimum would allow a reasonable jury to disbelieve Consol's stated reason. We also conclude that a reasonable jury could believe that age discrimination was more likely than not a motivating or determinative cause of Consol's decision. Accordingly, we will deny Consol's motion for summary judgment.

### C. Mitigation

Finally, Consol argues that it has no liability for any alleged damages occurring after December 2005 with regard to claims for front or back pay since Downing has failed to mitigate his damages after this time. We find that the summary judgment on this point is inappropriate as there are genuine issues of fact existing as to just what steps Downing did take. As with much of the evidence we have reviewed the questions here depend in large part on credibility determinations. Accordingly, we will deny Consol's motion for summary judgment on mitigation.

### D. Concluding remarks

We can not conclude our discussion without noting that both parties face a difficult challenge at trial. By denying summary judgment we do not mean to suggest that Consol has committed age discrimination or that Downing will be able to prevail on his claims at trial. Downing will have to convince a jury that he was selected for termination because of his age even though company-wide Consol's statistics show it did not target older employees for termination. In addition, merely because Bench was an apparently uninformed decision maker does not mean that his reason for terminating Downing was based on Downing's age.

13

We also note that Consol faces its own challenge in presenting its witnesses to a jury. Several of the main deponents for Consol were simply unable, or unwilling, to provide the most basic information to counsel about a $10,000,000 million dollar reduction in force. A jury will be determining the credibility of Consol's senior executives who claim to have no recollection as to the basic who, what, where, when, why, and how of this major reduction in force. A jury might reasonably conclude that the witnesses' failure to recall the events is best explained as a deliberate decision to avoid directly addressing unlawful age discrimination. In light of this deposition testimony it is no surprise to the Court that a motion for summary judgment was not initially timely filed.

## IV. Conclusion

For the reasons stated above Consol's motion for summary judgment will be denied. An appropriate Order will be entered.

October 5, 2006
Date

Maurice B. Cohill, Jr.,
Senior District Judge